UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARY HARRIS,                             )
       Plaintiff,                 )
                        )
                        )
    v.                                   )    Civil No. 3:18-cv-30114-KAR
                        )
                        )
THE WHEATLEIGH CORPORATION,              )
L. LINFIELD SIMON, SUSAN SIMON,          )
and MARC WILHELM,                        )
       Defendants.                )

MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT
(Dkt Nos. 65 and 73)

ROBERTSON, U.S.M.J.

       Plaintiff Mary Harris ("Plaintiff") is a former employee of the defendant The Wheatleigh

Corporation ("Wheatleigh"), which was owned and operated by the remaining defendants L.

Linfield Simon, Susan Simon, and Marc Wilhelm ("Wilhelm") (collectively, "Defendants").

Plaintiff alleges that Defendants violated the Fair Labor Standards Act ("FLSA") by

misclassifying her as an exempt employee and failing to pay her overtime wages.  Defendants

assert that Plaintiff fits within the executive exemption and was not entitled to overtime

compensation.  The parties, who have consented to this court's jurisdiction, have cross moved

for summary judgment (Dkt. Nos. 14, 65, 73).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For

the following reasons, the cross motions are DENIED.

## I.     FACTS[1]

Wheatleigh is a 19-room luxury hotel and fine-dining restaurant located in Lenox, Massachusetts (Def. SOF ¶ 1; Pl. Resp. ¶ 1).  Plaintiff was hired to work as the executive housekeeping manager at Wheatleigh on March 14, 2016 (Def. SOF ¶ 2; Pl. Resp. ¶ 2).  On that date, Wheatleigh sent Plaintiff an employment agreement outlining the terms of her employment, including her salary, benefits, and job duties and responsibilities, which Plaintiff signed and returned to Wheatleigh (Def. SOF ¶¶ 3-4; Pl. Resp. ¶¶ 3-4).  Plaintiff terminated her employment at Wheatleigh on October 3, 2018 (Def. SOF ¶ 5; Pl. Resp. ¶ 5).

Plaintiff was hired at a salary of $45,000.00 per year, which was paid at a rate of $1,730.76 every two weeks (Def. SOF ¶ 6; Pl. Resp. ¶ 6; Dkt. No. 67-4 at 4-31).[2]  Thereafter, Plaintiff received three raises: in November 2016, Plaintiff's bi-weekly pay increased to $1,826.00 (Dkt. No. 67-4 at 32, 64-79); in April 2017, Plaintiff's bi-weekly pay increased to $1,924.00 (Dkt. No. 67-4 at 80-114); and in April 2018, Plaintiff's bi-weekly pay increased to $1,975.00 (Dkt. No. 67-4 at 115-136).[3]  In addition to her regular pay, Plaintiff received cash and credit card tips while working for Defendants (Pl. SOF ¶ 52; Def. Resp. ¶ 52).

---

[1] Because this case is before the court on cross-motions for summary judgment, the court sets out any disputed facts in the light most favorable to the non-moving party.  *Ahern v. Shinseki*, 629 F.3d 49, 53-54 (1st Cir. 2010) (citing *Cox v. Hainey*, 391 F.3d 25, 29 (1st Cir. 2004)).  The facts are taken from the consolidated statement of facts (Dkt. No. 83), which includes Defendants' statement of facts ("Def. SOF"); Plaintiff's responses thereto ("Pl. Resp."); Plaintiff's statement of facts ("Pl. SOF"); and Defendants' responses thereto ("Def. Resp."); as well as from the materials cited therein.

[2] Plaintiff was paid only $1,306.38 for her first pay period ending April 2, 2016 (Dkt. No. 67-4 at 2-3).

[3] Plaintiff's name is missing from certain of the payroll records Defendants submitted, including the pay period ending April 15, 2017, the pay period ending February 3, 2018, and the pay periods ending July 7, 2018 through September 1, 2018 (Dkt. No. 67-4 at 78, 107, 125-133. Plaintiff was paid only $987.50 for her final pay period ending October 13, 2018 (Dkt. No. 67-4 at 137-138).

Plaintiff held a number of responsibilities in the area of executive housekeeping.  Plaintiff trained all new staff for housekeeping, laundry, public spaces, and turndown (Harris Interrogatory Answers (Dkt. No. 67-3) ("Harris Ints.") at 5).[4]  Plaintiff was responsible for scheduling staff, preparing daily room assignments, inspecting all rooms for arrivals, and handling all guest laundry (Def. SOF ¶¶ 12-14, 18; Pl. Resp. ¶¶ 12-14, 18).  Plaintiff executed purchase orders with approval from Wilhelm, the General Manager (Def. SOF ¶ 19; Pl. Resp. ¶ 19).  Plaintiff controlled the inventory of new linens and executed guest linen changes when new product arrived (Def. SOF ¶¶ 20, 22; Pl. Resp. ¶¶ 20, 22).  Plaintiff maintained all housekeeping storages and inventory of supplies, placing orders for small supplies as needed (Def. SOF ¶ 21; Pl. Resp. ¶ 21).  Plaintiff maintained all plants inside of the hotel, including purchasing and replacing them as needed (Def. SOF ¶ 23; Pl. Resp. ¶ 23).  Plaintiff performed weekly payroll for the department and collected and distributed department tips (Def. SOF ¶¶ 16-17; Pl. Resp. ¶¶ 16-17).[5]  In the area of quality assurance, Plaintiff created and maintained training materials for the housekeeping, front office, and restaurant departments and executed and held training

---

[4] Plaintiff submitted an affidavit in connection with her opposition to Defendants' motion for summary judgment and cross-motion attesting that she was not responsible for training all Wheatleigh staff for housekeeping, laundry, public spaces, and turndown (Dkt. No. 74-1 at ¶ 2). However, Plaintiff represented in her answers to interrogatories that she was responsible for training all new staff in these areas.  When "a party has given 'clear answers to unambiguous questions' in discovery, that party cannot 'create a conflict and resist summary judgment with an affidavit that is clearly contradictory.'" *Hernandez-Loring v. Universidad Metropolitana*, 233 F.3d 49, 54 (1st Cir. 2000) (quoting *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994)).  Thus, the court treats as undisputed the fact that Plaintiff trained all *new* staff in these areas.

[5] In Plaintiff's response to Defendants' undisputed fact that she performed payroll for the department, Plaintiff indicates that she "performed one of the minor functions relating to payroll" (Pl. Resp. ¶ 16).  However, Defendants' representation is taken directly from Plaintiff's answers to interrogatories, and Plaintiff has not identified any countervailing evidence in the record. Accordingly, the court treats as undisputed the fact that Plaintiff performed payroll for the department.

sessions with new staff to go over standards for all hotel departments (Def. SOF ¶¶ 24-25; Pl. Resp. ¶¶ 24-25).

Plaintiff also performed a variety of non-exempt duties.  These included cleaning and turning over guest rooms, cleaning public bathrooms and public spaces, cleaning and pressing hotel linens, laundering guests' items, removing stains, performing deep cleanings, assisting in covering front desk phones, assisting in making room and restaurant reservations, helping with bell services, helping with valet services, and assisting with concierge work (Pl. SOF ¶ 54; Def. Resp. ¶ 54).  Plaintiff would not perform non-exempt tasks if the housekeeping staff could take care of them (Def. SOF ¶ 28; Pl. Resp. ¶ 28).  That said, Plaintiff spent ninety-five percent of her time performing non-exempt tasks, primarily cleaning hotel rooms and doing guests' laundry (Pl. SOF ¶ 55; Pl. Resp. ¶ 55).  By contrast, Plaintiff spent five percent or less of her workweek performing exempt tasks (Pl. SOF ¶ 56; Pl. Resp. ¶ 56).

While working for Wheatleigh, Plaintiff directed the work of a number of employees, including nine housekeepers and one houseman (Harris Ints. at 11).  Plaintiff would supervise approximately two to three employees at any given time (Def. SOF ¶ 46; Pl. Resp. ¶ 46).

The parties dispute whether Plaintiff hired, fired, or disciplined any employees during her time at Wheatleigh, but agree that Defendants did not request any suggestions or solicit recommendations from Plaintiff relating to hiring, firing, advancement, or promotion (Def. SOF ¶¶ 48, 50 Pl. Resp. ¶¶ 48, 50; Pl. SOF ¶¶ 68, 70-71; Def. Resp. ¶¶ 68, 70-71).  Plaintiff did connect Wheatleigh with one person who Wheatleigh subsequently hired to help in food and beverage and to act as a consultant (Def. SOF ¶ 49; Pl. Resp. ¶ 49).  One housekeeping employee was disciplined on two separate occasions following Plaintiff's recommendation (Def. SOF ¶ 51; Pl. Resp. ¶ 51).

## II.    DISCUSSION

A.  Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "An issue is 'genuine' when a rational factfinder could resolve it either direction." *Mu v. Omni Hotels Mgmt. Corp.*, 882 F.3d 1, 5 (1st Cir.), *rev. denied*, 885 F.3d 52 (1st Cir. 2018) (citing *Borges ex rel. S.M.B.W. v. Serrano–Isern*, 605 F.3d 1, 4 (1st Cir. 2010)).  "A fact is 'material' when its (non)existence could change a case's outcome.  *Id*. (citing *Borges*, 605 F.3d at 5).

A party seeking summary judgment is responsible for identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 325).  If the moving party meets its burden, "[t]he non-moving party bears the burden of placing at least one material fact into dispute." *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The record is viewed in favor of the nonmoving party, and reasonable inferences are drawn in the nonmoving party's favor.  *See Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d 411, 417 (1st Cir. 2017) (citing *Ameen v. Amphenol Printed Circuits, Inc.*, 777 F.3d 63, 68 (1st Cir. 2015)).  "Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Grp., Inc. v. Ferré Dev., Inc.*, 241

F.3d 103, 107 (1st Cir. 2001) (citing *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

B.  Fair Labor Standards Act

The overtime provisions of the FLSA establish the general rule that employees must be compensated at a rate not less than one and one-half times their regular rate for all hours worked in excess of 40 during a single workweek.  29 U.S.C. § 207(a)(1).  Relevant to this case, an employer is exempted from this general rule for employees in a "bona fide executive … capacity."  29 U.S.C. § 213(a)(1).  The employer bears the burden of establishing an exemption. *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1070 (1st Cir. 1995).  A job title is not determinative of whether an employee is exempt under the FLSA.  *Cash v. Cycle Craft Co., Inc.*, 482 F. Supp. 2d 133, 136 (D. Mass. 2007), *aff'd*, 508 F.3d 680 (1st Cir. 2007) (citing 29 C.F.R. § 541.2).  "Whether an employee is exempt is determined by the employee's actual work activities, not by the employer's characterization of those activities through a job title or job description."  *Pippins v. KPMG, LLP*, 921 F. Supp. 2d 26, 42 (S.D.N.Y. 2012) (citations omitted).

"Pursuant to regulations issued by the Secretary of Labor, an employer seeking to establish that an employee is an exempted 'executive' must show: (1) the employee's salary is at least $455 per week, (2) the employee's 'primary duty' is management, (3) the employee 'customarily and regularly directs the work of two or more other employees,' and (4) the employee 'has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.'"  *Marzuq v. Cadete Enters., Inc.*, 807 F.3d 431, 435 (1st Cir. 2015) (quoting 29 C.F.R. § 541.100(a)).  "Concurrent performance of exempt and

nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met." 29 C.F.R. § 541.106(a). However, each of the four requirements must be met for the exemption to apply. *Marzuq*, 807 F.3d at 435. "A genuine dispute as to any of the four requirements is sufficient to deny summary judgment." *Roberts v. TJX Companies, Inc.*, No. 13-cv-13142-ADB, 2017 WL 1217116, at *7 (D. Mass. Mar. 31, 2017) (citing *Marzuq*, 807 F.3d at 435). Plaintiff appears to concede the third factor, that she customarily and regularly directed the work of two or more employees. The court addresses the remaining factors in turn.

### 1. Salary Requirement

The first requirement for the executive exemption is that the employee be paid at least $455 per week on a salary basis. 29 C.F.R. § 541.100(a)(1). At the inception of her employment at Wheatleigh, Plaintiff was paid $1,730.76 every two weeks before taxes regardless of how many hours she worked, which translates to $865.38 per week (Def. SOF ¶ 6; Pl. Resp. ¶ 6; Dkt. No. 67-4 at 4-31). Her rate of pay increased three times thereafter (Dkt. No. 67-4 at 32, 64-136). Thus, the dollar amount is easily satisfied. Plaintiff, however, argues that she did not receive this pay on a salary basis because it is undisputed that she received cash and credit card tips (Pl. SOF ¶ 52; Def. Resp. ¶ 52).

The regulations establish that an employee is considered to be paid on a "salary basis" "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). Plaintiff cites to *Wu v. Natural Tofu Restaurant Corp.*, 16-cv-3613-ARR-ST, 2018 WL 1009274, at *5 (E.D.N.Y. Feb. 20, 2018), to support the contention that an

employee who receives tips or is part of a tip pool is not paid on a salary basis.  However, *Wu* is

readily distinguishable.  The plaintiff in *Wu* was not paid a predetermined amount each pay

period, but rather her pay varied each week depending on how much she worked.  *Id*. at *5.

Because she was paid less for a half day of work than a full day, *id*. at *1, her pay was "subject

to reduction because of variations in the … quantity of the work performed."  29 C.F.R. §

541.602(a).  Plaintiff here received the same amount every week without any reduction based on

how well or how much she worked.  The tips that Plaintiff received were in addition to the

predetermined weekly amount, meaning that they would have no bearing on her status as an

exempt employee.  *See Tomaz v. MAX Ultimate Food, Inc.*, Civil Action No. 19-10533-RGS,

2020 WL 5517458, at *4 (D. Mass. Sept. 14, 2020) (citing *O'Brien v. Town of Agawam*, 350

F.3d 279, 293 (1st Cir. 2003)) ("That Tomaz … was permitted to keep tips from customers …

has no bearing on his status as an exempt employee.").  Thus, Defendants have satisfied the first

requirement of the exemption.

### 2.   The "Primary Duty" Requirement

The second requirement for the executive exemption is that the employee's "primary

duty" be "management."  29 C.F.R. § 541.100(a)(2).  Pursuant to the Secretary of Labor's

regulations, "management" activities include, but are not limited to:

> interviewing, selecting, and training of employees; setting and
> adjusting their rates of pay and hours of work; directing the work
> of employees; maintaining production or sales records for use in
> supervision or control; appraising employees' productivity and
> efficiency for the purpose of recommending promotions or other
> changes in status; handling employee complaints and grievances;
> disciplining employees; planning the work; determining the
> techniques to be used; apportioning the work among the
> employees; determining the type of materials, supplies, machinery,
> equipment or tools to be used or merchandise to be bought, stocked
> and sold; controlling the flow and distribution of materials or
> merchandise and supplies; providing for the safety and security of

> the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.  An employee's "primary duty" is management when it is "the principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700(a).  "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  *Id*.  The regulations lay out a list of four non-exhaustive factors to consider when determining the primary duty of an employee: (1) "the relative importance of the exempt duties as compared with other types of duties;" (2) "the amount of time spent performing exempt work;" (3) "the employee's relative freedom from direct supervision;" and (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."  *Id*.

### (a) Factor One: Relative Importance of Exempt Duties

The parties agree that Plaintiff performed both managerial and non-managerial duties, but they dispute the relative importance of each.  Defendants argue that Plaintiff's managerial duties were the most important parts of her job and were more important to Wheatleigh's success than her non-management duties.  Defendants rely primarily on the extent of Plaintiff's managerial duties, including training, scheduling, room assignments, room inspections, payroll, distributing tips, and maintaining inventories of supplies.  Defendants also note that Plaintiff worked until the day before she went into labor and testified that she would have departed for maternity leave sooner if she felt that there were accommodations in place for the housekeeping department to be able to run properly (Def. SOF ¶ 30; Pl. Resp. ¶ 30).  Moreover, before going on leave, Plaintiff started to teach certain of the housekeepers under her how to perform some of the tasks she was

doing and prepared a memo delegating various tasks to different members of the housekeeping department and leaving the front-office manager in charge (Def. SOF ¶¶ 31-33; Pl. Resp. ¶¶ 31-33).[6]

Plaintiff for her part submitted an affidavit attesting that her most important duties while at Wheatleigh were cleaning hotel rooms and doing laundry (Dkt. No. 74-1 at ¶ 4). She also points to the Rule 30(b)(6) deposition of Wheatleigh in which Wilhelm testified that every job Plaintiff did – from payroll to cleaning rooms – was important. He could not identify any one job as being more important than any other (30(b)(6) Depo. (Dkt. No. 67-10) at 162-163). Additionally, Plaintiff argues that the fact that the vast majority of her time was spent on non-exempt work and that Defendants did not replace her with a "housekeeping manager" while she was on maternity leave weigh against a determination that management was her primary duty.

Based on a review of the evidence before the court, neither party is entitled to summary judgment on this issue. As in *Marzuq*, "[t]he record contains evidence that [P]laintiff['s] managerial and nonmanagerial duties were both essential for the smooth functioning of the[ ] [hotel]." *Id.*, 807 F.3d at 440. Plaintiff was responsible for myriad management duties, which would appear to have been essential for the hotel to run. Indeed, Plaintiff delayed her maternity

---

[6] For additional support, Defendants cite to three documents that they have included in the record, namely a Final Warning purportedly issued to Plaintiff on January 16, 2018, Plaintiff's LinkedIn profile page, and Plaintiff's resume. However, Defendants did not authenticate the documents and, therefore, they are inadmissible at the summary judgment stage. *See G. v. Fay School*, 931 F.3d 1, 14 (1st Cir. 2019) (citing *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000)). Moreover, even if they were admissible, the documents would not tip the scales in Defendants' favor. Regarding the Final Warning, Defendants characterize it as stressing that Plaintiff's management and supervisory skills had to be improved but fail to point out that it also includes indications regarding the lack of cleanliness of rooms and the back of the house, issues that could be read as pertaining to Plaintiff's non-managerial duties. As to the LinkedIn profile and resume, the fact that Plaintiff would highlight her managerial duties in documents generally intended to secure future employment does not prove that those duties were more important than her non-management ones while she was employed at Wheatleigh.

leave over concern about those duties being completed and did not go on leave without delegating them. One month into Plaintiff's maternity leave, Wheatleigh found someone to take Plaintiff's place (Def. SOF ¶ 35; Pl. Resp. ¶ 35). On the other hand, Plaintiff spent nearly all of her time performing the non-exempt duties of a housekeeper. While she would not perform these duties if a housekeeper was available to do them, it appears that rarely occurred (Def. SOF ¶ 28; Pl. Resp. ¶ 28). And, according to Wilhelm, Wheatleigh's Rule 30(b)(6) designee, all of Plaintiff's duties were equally important. This evidence "permits the conclusion that, as a factual matter, h[er] non-managerial work also was 'critical to the success of the [hotel].'" *Marzuq*, 807 F.3d at 440 (quoting *Donovan v. Burger King Corp.*, 675 F.2d 516, 521 (2d Cir. 1982). "Hence, whether the 'relative importance' of duties factor supports the overtime exemption cannot be determined without a factfinder's judgment on the impact of the [P]laintiff['s] varied undertakings." *Id*. at 441.

*(b) Factor Two: The Amount of Time Spent Performing Exempt Work*

The second factor to be considered in determining whether Plaintiff's primary duty was management is the amount of time Plaintiff spent performing exempt work. The regulations provide guidance regarding this factor. While "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement," it is not a sine qua non. 29 C.F.R. § 541.700(b). "Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." *Id*. "Thus, the amount of time spent on exempt work is useful, but not dispositive of the primary duty inquiry." *Roberts*, 2017 WL 1217116, at *8.

Plaintiff testified that she spent only five percent or less of her time performing exempt work; the remaining ninety-five percent of her time was spent performing non-exempt tasks,

primarily cleaning hotel rooms and doing guests' laundry (Pl. SOF ¶¶ 55-56).[7]  Thus, at first

blush, the amount of time spent on exempt tasks appears to weigh against a finding of

management as Plaintiff's primary duty.  *See, e.g., Morgan v. Family Dollar Stores, Inc.*, 551

F.3d 1233, 1269 (11th Cir. 2008) ("Plaintiff store managers spent only 10 to 20% of their time

performing exempt work, a far cry from the DOL's 50% guideline for management tasks").

Defendants do not contest Plaintiff's estimates, but rather note that while Plaintiff was

performing physical housekeeping tasks, she was also supervising her subordinates (Def. Resp.

¶¶ 55-56).  Pursuant to Department of Labor regulations, "[c]oncurrent performance of exempt

and nonexempt work does not disqualify an employee from the executive exemption if the

requirements of 29 C.F.R. § 541.100 are otherwise met."  29 C.F.R. § 541.106 (a).  However,

Plaintiff's testimony regarding her concurrent performance of exempt and nonexempt work on

which Defendants rely is limited to when she was working side-by-side with housekeeping staff,

and the record is silent as to how frequently this occurred (Harris Depo. (Dkt. No. 67-2) at 61-

62).  Given this gap in the record, the court is unable to conclusively determine whether this

factor weighs in favor of a finding that management was or was not Plaintiff's primary duty.

### (c)  Factor Three: Relative Freedom from Direct Supervision

"[T]he third factor considers only the '*relative* freedom from supervision'; it does not

demand complete freedom from supervision, such that she is answerable to no one, as this would

disqualify all but the chief executive officer from satisfying this factor of the primary duty

inquiry."  *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 507 (6th Cir. 2007).  The

---

[7] Defendants assail Plaintiff's testimony on this point as self-serving.  Self-serving or not, it is evidence, and the court does not make credibility determinations on summary judgment.  *See Town of Westport v. Monsanto Co.*, 877 F.3d 58, 66 (1st Cir. 2017) ("[I]t is well-settled that a judge must not engage in making credibility determinations or weighing the evidence at the summary judgment stage ….").

parties dispute Plaintiff's relative freedom from supervision.  Defendants argue that Plaintiff was relatively free from direct supervision because there is no evidence in the record that she was supervised when she performed her managerial responsibilities, such as inspecting rooms, setting the schedule, dispensing room assignments, preparing payroll, distributing housekeeping tips, and providing training.  Plaintiff counters that she was not relatively free from direct supervision because she lacked authority to discipline employees, fire housekeeping staff, or order supplies without express approval from Wilhelm.

On this thin record, neither party has shown that this factor weighs in their favor. Defendants' reliance on the absence of evidence of supervision (rather than evidence of an absence of supervision) is insufficient as they bear the burden of proof on the affirmative defense.  *Perez v. Volvo Car Corp.*, 247 F.3d 303, 310 (1st Cir. 2001) (citing *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35-36 (1st Cir. 1998); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990)) ("[A]n absence of evidence on a critical issue weighs against the party – be it the movant or nonmovant – who would bear the burden of proof on that issue at trial."). Plaintiff, on the other hand, has only identified two areas in which it is undisputed that she was subject to supervision.  Defendants contest Plaintiff's assertion that she did not have the authority to discipline employees.  As to firing and purchasing authority, Defendants concede that Plaintiff did not have the ultimate authority to fire Wheatleigh staff, and that Plaintiff had to have the approval of Wilhelm to execute purchase orders.  However, if Plaintiff was free from supervision in all other areas on which the record is silent, a factfinder could still conclude that Plaintiff was relatively free from direct supervision.  On this record, the court cannot determine whether this factor weighs in favor of either party.

> (d) *Factor Four: Relationship Between Plaintiff's Salary and the Wages*
> *Paid to Hourly Employees for Similar Nonexempt Work*

The fourth factor to be considered is the wage differential between the purported exempt

executive's salary and the wages paid to hourly employees who perform similar non-exempt

work.  This factor can illuminate the importance the employer places on the additional

management duties.  *Bucceri v. Cumberland Farms, Inc.*, No. 15-CV-13955-IT, 2019 WL

3755442, at *5 (D. Mass. July 18, 2019).  "If the differential with the next highest paid employee

is large, the different wage rates support the conclusion that the managerial duties are of

importance and thus may be the employee's 'primary duties,' and if the differential is small, the

wage rates support the conclusion that the management duties are not that important to the

employer, and are unlikely to be the employee's primary duties."  *Id*.

Here, Plaintiff was initially paid $865.38 per week before taxes and by the time of her

departure was paid $987.50 per week before taxes.  Defendants have submitted payroll records

showing that hourly employees in the housekeeping department were paid between $12.50 and

$18.00 per hour during this time (Dkt. No. 67-4).  "An accurate comparison of weekly and

hourly wages necessarily depends on the number of hours attributed to the salaried employees,"

*Marzuq*, 807 F.3d at 444, yet there is no evidence in the record regarding the number of hours

Plaintiff worked.[8]  Thus, the record does not establish Plaintiff's approximate hourly rate of pay

for purposes of comparison.  *See id*.  The court in *Marzuq* directed that two other factors be

considered as well.  "First, the hourly employees also received tip income, increasing their

---

[8] In Plaintiff's memorandum, she makes representations regarding how many hours she worked
during two particular two-week pay periods.  Specifically, Plaintiff states that she worked
approximately 120.75 hours for the pay period ending June 24, 2017, and 116 hours for the pay
period ending February 3, 2018.  However, it is unclear where Plaintiff obtained these numbers.
Plaintiff cites only to the unredacted payroll records she filed, and those records attribute 80
hours of work to Plaintiff every two weeks regardless of how many hours she actually worked
(Dkt. 79-4 at 1; 79-6 at 89).

earnings by some margin." *Id*. "Second, a fair comparison of wages also needs take into account that, if managers were compensated like hourly employees, hours worked over forty would be paid at the overtime rate of time-and-a-half."[9]  *Id*. at 445.  Accordingly, without evidence regarding the number of hours Plaintiff worked, including how many overtime hours, and evidence regarding tip income to other employees in the housekeeping department, this court cannot accurately determine the relationship between Plaintiff's salary and the wages paid to hourly employees for the similar nonexempt work.  Thus, the court cannot say whether the relative wage factor supports the conclusion that Plaintiff's primary duty was management or that it was not.

### (e) The "Primary Duty" Requirement Overall

In summary, both sides have failed to establish that any of the four factors to be considered under the "primary duty" inquiry – relative importance, time spent, freedom from supervision, and wage differential – weigh conclusively in their favor.  As such, the issue of whether Plaintiff's "primary duty" was management cannot be decided as a matter of law in this case.

### 3.   The Hiring/Firing Requirement

The fourth requirement for the executive exemption is that the employee "has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight."  29 C.F.R. § 541.100(a)(4).  The regulations provide that "[t]o determine whether an employee's suggestions and recommendations are given 'particular

---

[9] So, for example, if an employee earning the highest hourly wage of $18.00 worked 120 hours in a given biweekly pay period (as Plaintiff represents that she did for at least one week), she would be paid $18.00 for the first 80 hours and $27.00 for the next 40 hours, for a total of $2,520.00, or $1,260.00 per week, plus tips.

weight,' factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105.  "An employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status."  Id.

Defendants argue that they satisfy the hire-and-fire element based on Fed. R. Civ. P. 30(b)(6) testimony from Wilhelm that Plaintiff hired Alex Soriano, Claudia Ramirez, Irvin Cazares, and Justine Estrada (Def. SOF ¶ 48) and that she fired Edith Fontes (Def. SOF ¶ 50). Defendants also argue that Plaintiff connected Wheatleigh with an individual named Kate Maxin and that Wheatleigh subsequently hired Maxin to help in food and beverage and act as a consultant (Def. SOF ¶ 49) and that Plaintiff recommended that housekeeping employee D'Juana DeWitt be disciplined on two separate occasions, and she was (Def. SOF ¶ 51).  Plaintiff admits the facts regarding Maxin and DeWitt (Pl. Resp. ¶¶ 49, 51).  However, she disputes that she had the authority to hire or fire employees or that she hired or fired anyone during her time at Wheatleigh (Pl. Resp. ¶¶ 48, 50).  She also avers in an affidavit that Wheatleigh did not request any suggestions or solicit any recommendations from her relating to hiring, firing, advancement, or promotion during her employment, a representation which Defendants do not dispute (Pl. SOF ¶ 71; Def. Resp. ¶ 71).  Thus, at most, the undisputed facts establish only that during Plaintiff's over two-and-a-half years of employment, she "connected" Wheatleigh with one individual who was hired into a different department and that a housekeeping employee was twice disciplined in accordance with Plaintiff's recommendation.  Given the dispute over Plaintiff's role in hiring and

16

firing at Wheatleigh, there is no basis in the record on which summary judgement in favor of either Defendants or Plaintiff could be allowed with respect to this fourth element.

## III.    CONCLUSION

The issues of whether Plaintiff's "primary duty" was management and whether Plaintiff had the "authority to hire or fire other employees or [her] suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees [we]re given particular weight" cannot be decided as a matter of law in this case.  Accordingly, for the above-stated reasons, Defendants' motion for summary judgment (Dkt. No. 65) and Plaintiff's cross motion for summary judgment (Dkt. No. 73) are DENIED.

It is so ordered.

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED:  August 27, 2021

17

1.  <u>Customarily and Regularly Directs the Work of Two or More Other</u>
    <u>Employees</u>

The third requirement under the executive exemption is that the employee customarily and regularly directs the work of two or more other employees.  29 C.F.R. § 541.100; *Marzuq*, 807 F.3d at 435.  "The phrase 'two or more other employees' means two full-time employees or their equivalent."  29 C.F.R. § 541.104.  "'[C]ustomarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant."  29 C.F.R. § 541.701.

When Plaintiff was working side-by-side with other employees in the housekeeping department, she would simultaneously supervise them (Def. SOF ¶ 29; Pl. Resp. ¶ 29).  As housekeeping manager, Plaintiff could delegate certain functions to the housekeepers (Def. SOF ¶ 26; Pl. Resp. ¶ 26).  Plaintiff "technically" could not leave for the day unless all housekeeping tasks were done (Def. SOF ¶ 27; Pl. Resp. ¶ 27).  If Plaintiff was on the property and there was no immediate need, such as a pending room that needed to be cleaned, she was expected to attend head of department meetings (Def. SOF ¶ 38; Pl. Resp. ¶ 38).

If Plaintiff worked 40 hours per week, her pay would work out to $21.63 per hour at the start and $24.69 per hour by the end.

Because Defendants have failed to meet their burden on the "primary duty" element of the executive exemption, they are not entitled to summary judgment.

*Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 829 (10th Cir. 2012) ("[S]ummary judgment is appropriate only if all reasonable factfinders would conclude that the managerial portions of plaintiffs' jobs are their 'primary duties.'").